UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN M. SOMERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-01424-JMS-DKL |
| | ) | |
| EXPRESS SCRIPTS HOLDINGS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Brian Somers worked at Express Scripts Holdings ("Express Scripts") as an Electrical Maintenance Technician ("EMT").[1]  Beginning during the first month of his employment, in February 2012, Mr. Somers complained to his managers and supervisors that he was being harassed by a fellow male employee on the basis of his Jewish religion and his gender. Mr. Somers alleges that the harassment continued, despite repeated complaints to supervisors and the human resources department, through his resignation in March 2014.  Shortly after his resignation, Mr. Somers filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  Mr. Somers claims that Express Scripts subjected him to a hostile work environment, constructively discharged him, and retaliated against him by failing to rehire him after his alleged harasser was terminated, all in violation Title VII.

Presently pending before the Court are (1) a Motion for Summary Judgment filed by Express Scripts, [Filing No. 52]; and (2) Motions to Strike certain evidentiary submissions and

---

[1] In its brief in support of summary judgment, Express Scripts claims that Mr. Somers "improperly named 'Express Scripts Holdings' as the defendant in this action," and that Mr. Somers' employer was actually Express Scripts Pharmacy, Inc.  [Filing No. 53 at 1.]  By separate order, the Court has directed the parties to meet and confer to determine whether they can stipulate as to the proper name of the defendant entity.

statements of fact filed by both Express Scripts and Mr. Somers, [Filing No. 63; Filing No. 67]. All motions are now ripe for the Court's review. For the reasons that follow, the Court denies in part and grants in part Express Scripts' Motion for Summary Judgment and denies in part and grants in part the parties' Motions to Strike certain evidence.

**I.**

**MOTIONS TO STRIKE CERTAIN EVIDENCE AND STATEMENTS OF FACT**

Before analyzing the substantive arguments Express Scripts raises in its Motion for Summary Judgment, the Court will consider both Express Scripts' and Mr. Somers' Motions to Strike certain evidence, as raised in their reply and surreply briefs. [Filing No. 63; Filing No. 67.] This is necessary because these motions relate to the scope of information that the Court could consider in deciding the Motion for Summary Judgment.[2]

---

[2] The Court's Practices and Procedures clearly set forth in Appendix A how to cite to exhibits in a brief. [Filing No. 5.] The parties have not followed the Court's clear instruction, instead referring to exhibits by name or number, and citing to their actual page or paragraph numbers instead of their ECF page numbers. For example, Express Scripts cites to material from Dave Miller's deposition as "Miller Dep. at 36-37, 39." [See Filing No. 63 at 3.] Instead, the citation should be "Filing No. 54-5 at 15," which corresponds to the ECF number of the document, and the ECF page number where the cited testimony appears. Express Scripts has compounded that issue by not following the Court's established practice for labeling the exhibits it has filed. The Court has clearly set forth in Appendix A that a party is instructed to both number the exhibit *and add a descriptive modifier*, such as "Exhibit 1 – Affidavit of John Smith." [Filing No. 5.] Express Scripts provides no descriptive modifiers for the exhibits filed with its Motion for Summary Judgment, [Filing No. 54], making it exceedingly time-consuming for the Court to locate any of the exhibits it cites. Similarly, Mr. Somers has not followed the Court's Practices and Procedures, and refers to the exhibit name rather than the ECF number of the document. For example, Mr. Somers cites to material on page 9 of excerpts from Mr. Somers' deposition as "Somers Dep. p. 9:4-19." [Filing No. 57 at 1.] This citation should be "Filing No. 58-2 at 4," which denotes the ECF number of the document, and the ECF page number where the cited testimony appears. The parties' failure to provide the form of citation the Court has specifically set forth in its Practices and Procedures made the Court's review of the pending motion unnecessarily cumbersome. Counsel are cautioned to comply with the Court's Practices and Procedures going forward in this and other cases.

Express Scripts moves the Court to strike the entire affidavit sworn by Mr. Somers, [Filing No. 63 at 4], one paragraph in the affidavit sworn by Marshall Tucker, [Filing No. 63 at 6], and certain paragraphs of Mr. Somers' statement of material facts, [Filing No. 63 at 6-8]. Mr. Somers opposes these Motions to Strike. [Filing No. 67 at 2-3.] Mr. Somers moves to strike one piece of evidence submitted by Express Scripts, and he moves for the substitution of an affidavit whose original contained an inadvertent error. [Filing No. 67.]

**A. Challenged Affidavits**

Mr. Somers executed an affidavit on December 16, 2016 and submitted it with his response in opposition to Express Scripts' Motion for Summary Judgment. [Filing No. 58-1.] Express Scripts argues that this affidavit violates the Seventh Circuit's "sham affidavit rule," in that it directly contradicts Mr. Somers' deposition testimony. [Filing No. 63 at 4.] It is true that "courts do not countenance the use of so-called 'sham affidavits,' which contradict prior sworn testimony, to defeat summary judgment." *U.S. v. Funds in Amount of $3,670*, 403 F.3d 448, 466 (7th Cir. 2005). However, Express Scripts has identified no specific instance in which Mr. Somers' affidavit conflicts with his deposition testimony. Indeed, Express Scripts provides no citations at all to Mr. Somers' deposition in making this argument.[3] The Court will not scrutinize the 78 pages of deposition transcript submitted by Express Scripts with its Motion for Summary Judgment in order to determine whether the two documents contain conflicting testimony, and if so, whether the affidavit constitutes a "sham". As the Seventh Circuit and this Court have cautioned on multiple occasions, "parties cannot leave it to this court to scour the record in search of factual or legal support for a claim." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 547 fn. 10

---

[3] In a subsequent section of its reply brief, Express Scripts identifies three statements of material fact made by Mr. Somers that it alleges demonstrate a conflict between the affidavit and identified portions of deposition testimony. The Court addresses those individually in Section I.B.

(7th Cir. 2002) (internal quotation and citation omitted).  Express Scripts' Motion to Strike Mr. Somers' affidavit is **DENIED**.

Express Scripts also objects to Paragraph 4 of Marshall Tucker's affidavit, [Filing No. 58-12], arguing that Mr. Tucker attests to a fact that is contradicted by other record evidence.  [Filing No. 63 at 6.]  Mr. Tucker states in his affidavit that Mr. Somers complained to him in November 2013 of harassment.  But Mr. Tucker only worked for Express Scripts through January of 2013, as stated in a prior paragraph of his affidavit.  Express Scripts argues that because Mr. Somers could not have complained to Mr. Tucker when Mr. Tucker no longer worked with Mr. Somers, that statement should be stricken.  [Filing No. 63 at 6.]

In his surreply, Mr. Somers responds that while the affidavit states "2013," it should read "2012," and that Mr. Tucker made an inadvertent error in stating that the relevant year was 2012.  [Filing No. 67 at 4.]  Mr. Somers argues that the mistake is evident from the face of the affidavit, in that Mr. Tucker clearly acknowledges that he worked as a maintenance supervisor only until January of 2013.  [Filing No. 67 at 4.]  Mr. Somers submitted an amended affidavit, which corrects the error, and in which Mr. Tucker states, "I am submitting this amended affidavit because I inadvertently stated in my original affidavit that 'In November of 2013 Brian Somers complained to me… .'  I meant to say Brian Somers complained to me in November 2012 when I was still working for Defendant."  [Filing No. 67-1 at 1.]  Mr. Somers moves the Court to substitute this amended affidavit for the original one.  [Filing No. 67 at 4.]  The Court **GRANTS** Mr. Somers' Motion to Substitute the amended affidavit, and therefore **DENIES** Express Scripts' Motion to Strike as moot.

**B. Challenged Statements of Material Fact**

Express Scripts also raises multiple objections to statements in Mr. Somers' statement of material facts. The Court addresses each in turn.

Express Scripts moves to strike the following statement: "Mr. Somers estimates [Mr. Nakabayashi] is about 6'4" 300 [pounds]." [Filing No. 57 at 5.] Express Scripts argues that this statement must be stricken, because Mr. Somers does not have personal knowledge as to Mr. Nakabayashi's height or weight. [Filing No. 63 at 6.] Federal Rule of Civil Procedure 56(c)(4) requires that affidavits "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Mr. Somers' deposition testimony and affidavit established that he worked with Mr. Nakabayashi, and was therefore in a position to make observations as to Mr. Nakabayashi's height and weight. Express Scripts has not suggested that Mr. Somers' estimate is not "rationally based on the perception of the witness," as required by Fed. R. Evid. 701(a). And Express Scripts has offered no reason to conclude that Mr. Somers' estimate was not reasonable or was not "grounded in observation or other first-hand personal experience," as opposed to "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). Express Scripts' Motion to Strike this statement is therefore **DENIED**.

Express Scripts also objects to the statement that "Mr. Somers suffered extreme stress and mental anxiety to the point it resulted in depression and marital difficulties." [Filing No. 57 at 5.] Express Scripts argues that (1) this is not an issue for summary judgment; and (2) medical records from Mr. Somers' primary care physician do not state that his stress was related to his job, but instead state that Mr. Somers suffered "significant anxiety due to recent stressors, death in the

family." [Filing No. 63 at 6.] Express Scripts argues that there is "no evidence of extreme stress and mental anxiety." [Filing No. 63 at 6-7.] First, the effects of workplace stress on Mr. Somers could be relevant, to the extent that they tend to prove the existence or absence of a hostile work environment. Second, Mr. Somers testified about his stress and anxiety during his deposition, so he has provided some evidence in support of this allegation. [Filing No. 58-2 at 33-34.] And third, for the reasons described below, the Court will not consider the medical records proffered by Express Scripts. Express Scripts' Motion to Strike this statement is therefore **DENIED**.

Express Scripts objects to the statement that "Nakabayashi was not disciplined as a result of the complaint made by Mr. Somers to Human Resources in November 2012." [Filing No. 57 at 8.] Express Scripts argues that Mr. Somers does not have personal knowledge as to whether Mr. Nakabayashi was disciplined. [Filing No. 63 at 7.] The material cited to by Mr. Somers in support of his statement does not support the conclusion that Mr. Somers had personal knowledge regarding whether Mr. Nakabayashi was disciplined. Express Scripts' Motion to Strike this statement is **GRANTED.**

Express Scripts objects to the statement that "Dave Miller was not given a written warning." [Filing No. 57 at 12.] It argues that this statement directly contradicts the preceding allegation in the statement of facts, and that Mr. Miller did in fact receive a written warning. [Filing No. 63 at 7.] First, the preceding paragraph states that it was *recommended* that Mr. Miller be given a written warning—it did not address whether Mr. Miller actually received a warning. [Filing No. 57 at 11.] It is of course possible that no one followed or carried out the recommendation, and the Court cannot conclude that these statements are contradictory. Second, Mr. Somers cites the deposition testimony of Mr. Miller as supporting the allegation that Mr. Miller was not given a written warning. Mr. Miller's cited deposition testimony is as follows: "Q:

Did you receive a written warning? A: No, I did not." [Filing No. 58-10 at 10.] Express Scripts'

Motion to Strike this statement is **DENIED**.

Express Scripts objects to the statement that "Mr. Somers did report his concerns and Loren Murphy's response to Tracie Oden, Human Resource Director; VaShound Taylor, Director of Engineering; Jerry Barksdale, Senior Manager of Engineering and Maintenance; Dave Miller, Senior Manager of Engineering; and an individual in Defendant's corporate office in St. Louis." [Filing No. 57 at 13.] Express Scripts objects on the basis that the incident described within this statement is time-barred by the statute of limitations applicable to Title VII claims. [Filing No. 63 at 7.] Express Scripts also argues that these statements are based on Mr. Somers' inadmissible affidavit.

As described in Section II.C.1 below, the Court concludes that the incident referenced by Mr. Somers is not barred by the statute of limitations. However, even if it were, Express Scripts would still not be entitled to strike the challenged statement. As the statute of limitations analysis makes clear, in order to determine whether a particular incident falls within the "continuing violation" theory of a hostile work environment claim, the Court will often need to examine incidents alleged to fall outside of the limitations period. Therefore, evidence regarding such incidents—even if the Court later determines them to be barred by the statute of limitations—are in the first instance properly before the Court. Moreover, for the reasons described above, Mr. Somers' affidavit is admissible, and therefore reliance upon it is proper. Express Scripts' Motion to Strike this statement is **DENIED**.

Express Scripts objects to the statement that "[t]here was no investigation of Mr. Somers' November 2012 complaint to Human Resources and VaShound Taylor." [Filing No. 57 at 13.] Express Scripts contends that Mr. Somers' own testimony establishes that an investigation did

occur. [Filing No. 63 at 7.] After reviewing the cited materials, the parties appear to be disputing what constitutes an "investigation," or whether Express Scripts' activities can be properly classified as investigatory. The same is true regarding the statements challenged in Paragraph 71. This involves a genuine dispute of material fact, so Express Scripts' Motion to Strike these statements is **DENIED**.

Express Scripts appears to take issue with the word "first investigation," as used in Paragraph 76 of Mr. Somers' objections to Express Scripts' statement of material facts. It is not clear from Express Scripts' brief precisely what language it asks the Court to strike, and upon what basis. Express Scripts' Motion to Strike as to this statement is **DENIED**.

Express Scripts also objects to the statement that "Mr. Somers did not tell Mrs. Oden that there had not been any further issues with Nakabayashi as of April 2013." [Filing No. 57 at 17.] Express Scripts argues that this statement, which cites Mr. Somers' affidavit, conflicts with his deposition testimony and therefore must be stricken. Express Scripts cites to "Somers Dep. at 67, 101-103, Ex. 9" as including the relevant deposition testimony. The Court reviewed the portion of Mr. Somers' deposition transcript submitted by Express Scripts, and the cited pages contain no reference to Ms. Oden. The Court will look no further to attempt to locate the deposition testimony to which Express Scripts refers. The Motion to Strike this statement is **DENIED**.

Express Scripts objects to Mr. Somers' statement that "[w]hen Mr. Somers was initially hired he did not complete an application until after he was hired." [Filing No. 57 at 19.] Mr. Somers included this statement in his objection to Express Scripts' statement of fact that "[i]n any event, Plaintiff never submitted an application to become re-employed at Express Scripts. Nor did he ever speak to anyone from Express Scripts' Human Resources Department about becoming re-employed." [Filing No. 57 at 19.] Express Scripts argues that it is undisputed that Mr. Somers

never spoke to anyone from Express Scripts' human resources department about becoming re-employed. [Filing No. 63 at 8.] Assuming that this is the basis for Express Scripts' objection to the challenged statement, what it actually objects to is the inference that this statement invites—not the statement itself. The inference invited is that Mr. Somers was not *required* to submit an application, as evidenced by Express Scripts' prior hiring practice. While Express Scripts may argue that this inference is incorrect, a motion to strike an otherwise admissible statement is not the proper method by which to raise that argument. Express Scripts also argues that the statement should be stricken because it cites to the "sham" affidavit. [Filing No. 63 at 8.] But, again, Express Scripts does not cite to any contradictory deposition testimony. The Motion to Strike this statement is **DENIED**.

Express Scripts objects to statements in Paragraphs 2 and 82 of Mr. Somers' statement of material facts, in which he asserts that he did not voluntarily resign, but was forced to resign due to continued harassment. [Filing No. 63 at 8.] Express Scripts contends that these statements conflict with Mr. Somers' prior testimony, in that he "admit[ted] he quit his job with Express Scripts, and had arranged for another position." [Filing No. 63 at 8.] However, Mr. Somers' deposition testimony and this statement are not inherently inconsistent: he both could have been compelled to resign due to continued harassment (which he may refer to as quitting) and have arranged for another job. Express Scripts also argues that as the statement is supported by Mr. Somers' "inadmissible affidavit," it must be stricken. As described above, this argument is unavailing. Express Scripts' Motion to Strike this statement is **DENIED**.

### C. Challenged Medical Records

Mr. Somers moves to strike the medical records submitted by Express Scripts, arguing that (1) the medical records have not been properly authenticated and are therefore inadmissible

hearsay; and (2) that the medical records are irrelevant, and therefore inadmissible. [Filing No. 67.] Express Scripts submits the medical records in order to refute Mr. Somers' contention that he suffered severe stress and anxiety as a result of his working conditions. However, Mr. Somers points out that the medical records cited by Express Scripts relate to a visit with Mr. Somers' primary care physician that occurred in February 2016. Mr. Somers left Express Scripts' employ in March 2014, almost two years before the medical visit at issue. The Court agrees with Mr. Somers that the medical records submitted by Express Scripts are not relevant to the issues before the Court on this motion for summary judgment which exclusively challenges liability, and the Court **GRANTS** Mr. Somers' Motion to Strike this evidence for purposes of this ruling.

## II.
### MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion

can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

**B. Background**

The following factual background is set forth pursuant to the standards detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Plaintiffs as the non-moving parties, drawing all reasonable inferences in their favor.  *See, Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Mr. Somers is a Jewish man.  [Filing No. 58-2 at 4.]  Mr. Somers began working for Express Scripts in February 2012 as an EMT.  [Filing No. 58-2 at 7.]  His job involved servicing and repairing the automated machines that fill and prepare mail-order prescriptions.  [Filing No. 58-2 at 7-8.]  While Mr. Somers worked for Express Scripts, his supervisory chain of command was as follows, listed from greatest to least supervisory authority: Senior Director, John Sands; Director, VaShound Taylor; Senior Managers, Jerry Barksdale (May 2012 – April 2013) and Dave Miller (August 2013 – March 2014); Day Shift Maintenance Supervisor, Loren Murphy; and Second Shift Maintenance Supervisors, Marshall Tucker (February 2012 – January 2013) and Curtis Whitcomb (February 2013 – March 2014).  [Filing No. 58-1 at 2.]  Tracie Oden was Express Scripts' director of human resources at the Whitestown location from the time Mr. Somers was hired through March 2013.  [Filing No. 58-1 at 2.]

Express Scripts' employee handbook describes the following "Open Door Policy":

[f]ree and open communication and dialogue are critical to achieving and maintaining a positive work environment.  If you have a concern, we encourage you to discuss it with your immediate supervisor.  While we fully expect that most issues should be able to be resolved with your supervisor, if you do not feel comfortable discussing the issue with your immediate supervisor or discussions with your supervisor have not resolved the issue, you may discuss the issue with any member of the Senior Management Team or Human Resources.

[Filing No. 58-4 at 17.]  Mr. Barksdale and Mr. Miller had disciplinary responsibility for employees under their authority.  [Filing No. 58-8 at 4.]  They had the authority to write up, suspend, and terminate employees.  [Filing No. 58-8 at 4; Filing No. 58-10 at 5.]  The supervisors working under Mr. Barksdale and Mr. Miller also had the authority to terminate employees and were not required to receive Mr. Barskdale's or Mr. Miller's approval before doing so.  [Filing No. 58-8 at 4.]

Michael Nakabayashi worked as an EMT on the first shift.  [Filing No. 54-1 at 19.]  Starting on Mr. Somers' first day of employment, in February 2012, Mr. Nakabayashi began calling him "Chubs" and "Puddin".  [Filing No. 54-1 at 21.]  As time progressed, Mr. Nakabayashi began calling Mr. Somers a "little faggot," "prison bitch," and "cock sucker," [Filing No. 54-1 at 27; Filing No. 54-1 at 31], and he repeatedly physically groped Mr. Somers, [Filing No. 54-1 at 27].  Mr. Nakabayashi would slap, grab, and pull Mr. Somers' testicles, [Filing No. 54-1 at 31; Filing No. 58-2 at 33], and would grab Mr. Somers by the hips from behind and simulate sexual intercourse, [Filing No. 54-1 at 24].  At times, Mr. Nakabayashi's groping would cause bruising to Mr. Somers' hips.  [Filing No. 54-1 at 36.]  Mr. Nakabayashi also simulated "[Mr. Nakabayashi's] fist going in [Mr. Somers'] ass."  [Filing No. 54-1 at 27.]  Mr. Somers stated that the groping was sometimes painful, and that while groping him, Mr. Nakabayashi would tell Mr. Somers that Mr. Somers "liked it."  [Filing No. 54-1 at 24.]  Mr. Nakabayashi also stated to Mr. Somers, "I bet you give a great knob job, wouldn't you," and that Mr. Nakabayashi would meet Mr. Somers "at the truck stop."  [Filing No. 58-2 at 34.]  Mr. Somers became fearful that Mr. Nakabayashi would attempt to sexually assault him.  [Filing No. 58-2 at 33.]

Within the first three to four weeks of his employment, in February or March 2012, Mr. Somers complained to his supervisor Loren Murphy about Mr. Nakabayashi's groping and

remarks.  [Filing No. 54-1 at 28.]  Mr. Murphy told Mr. Somers to grow a thicker skin.  [Filing No. 54-1 at 28.]  Mr. Somers complained again to Mr. Murphy shortly after his first complaint, and Mr. Murphy told him to "get used to it."  [Filing No. 54-1 at 29.]

In or around April 2012, Mr. Nakabayashi noticed that Mr. Somers wore a Star of David necklace.  [Filing No. 54-1 at 30.]  He asked Mr. Somers whether he was Jewish, and Mr. Somers responded that he was.  [Filing No. 54-1 at 30.]  Mr. Nakabayashi then began telling Mr. Somers and others that Jewish people "carry diseases," and in the presence of other people, he called Mr. Somers, among other names, a "fat fucking Jew," "Jew bastard," "Jew boy," "dirty Jew," and "Christ killer."  [Filing No. 54-1 at 30; Filing No. 54-1 at 32; Filing No. 58-13 at 4.]  Mr. Nakabayashi also stated that "the Holocaust was a punishment for the Jews because they killed Jesus," and that "Hitler was misunderstood."  [Filing No. 58-2 at 34.]  In May or June 2012, Mr. Somers reported Mr. Nakabayashi's behavior—including the groping and the remarks related to Mr. Somers' Jewish religion—to Marshall Tucker, who had become Mr. Somers' supervisor.  [Filing No. 54-1 at 31.]  Mr. Somers is not aware of any action being taken as a result of that complaint.  [Filing No. 54-1 at 33.]

Mr. Nakabayashi's behavior continued after Mr. Somers complained to Mr. Tucker.  [Filing No. 54-1 at 34.]  Mr. Somers made a second complaint in November 2012 to Mr. Tucker, stating that things had "gotten way out of hand."  [Filing No. 54-1 at 34.]  Mr. Tucker informed Mr. Somers that a report should be made to the human resources department.  [Filing No. 54-1 at 35.]  Mr. Somers initially spoke to Ray Mack in human resources and recounted the details of Mr. Nakabayashi's behavior.  [Filing No. 54-1 at 36.]  Ms. Mack then brought Mr. Somers to see Tracie Oden, the local director of human resources, to whom he again explained his experiences with Mr.

Nakabayashi. [Filing No. 54-1 at 37-38.] The following day, Ms. Mack called Mr. Somers and asked him to write a full account of what he had experienced. [Filing No. 54-1 at 38.]

A few days later, Mr. Somers submitted that written account to VaShound Taylor, and the two of them met to discuss Mr. Somers' allegations. [Filing No. 58-2 at 17.] Mr. Somers again explained what had occurred with Mr. Nakabayashi, and Mr. Taylor stated that "this [was] totally unacceptable behavior." [Filing No. 54-1 at 41-42.] At some point, Mr. Taylor told Mr. Somers not to say anything to anyone about these incidents, because an internal investigation was going to be conducted. [Filing No. 54-1 at 42.] No one who was aware of Mr. Somers' complaints informed Jerry Barksdale, Mr. Somers' manager, of the complaints or alleged harassment. [Filing No. 58-8 at 9-10.] Ms. Oden met with the engineering department's senior leadership regarding the issue, and she asked Mr. Taylor to speak to the engineering group about "coworkers respecting each other." [Filing No. 58-5 at 3.]

On January 30, 2013, Mr. Somers reported to Mr. Barksdale that he was being religiously and sexually harassed by Mr. Nakabayashi. [Filing No. 58-8 at 5.] Immediately after Mr. Somers reported the alleged harassment, Mr. Barksdale met with Ms. Oden to discuss the complaint. [Filing No. 58-8 at 6.] During that meeting, Ms. Oden informed Mr. Barksdale that Mr. Somers had made a complaint in November 2012 regarding Mr. Nakabayashi's behavior, and that the complaints raised by Mr. Somers on this occasion were consistent with those he raised the preceding November. [Filing No. 58-8 at 9.] Mr. Barksdale testified that he found it odd that he was not informed of the prior complaint by either Ms. Oden or Mr. Taylor, and that it would have been appropriate for them to have notified him. [Filing No. 58-8 at 10.] Mr. Barksdale testified that if he had known, he could have possibly done something to stop the behavior, or at least monitor the situation. [Filing No. 58-8 at 10.]

Ms. Oden initiated a formal investigation of Mr. Somers' complaint. [Filing No. 58-8 at 6.] The investigation uncovered evidence that Mr. Nakabayashi was responsible for using "gay" and "religious" slurs. [Filing No. 58-8 at 8.] As a result, Ms. Oden "communicated a cease and desist direction to [Mr. Nakabayashi], that he was to immediately stop all inappropriate activity. And evidencing [sic] continuation of said activity could result in potential termination." [Filing No. 58-8 at 8.] The investigation also concluded that the local management had allowed the workplace to become too casual. [Filing No. 58-9 at 6.] It was recommended that Mr. Barksdale receive training on the "Fundamentals of Supervision," but he never received that training. [Filing No. 58-9 at 6.] On March 14, 2013 Mr. Barksdale presided over a meeting that all engineering and maintenance group staff were required to attend. [Filing No. 58-8 at 7; Filing No. 58-8 at 13.] Mr. Nakabayashi was present at that meeting. [Filing No. 58-8 at 7.] During that meeting, Mr. Barksdale gave a PowerPoint presentation that had been provided by Ms. Oden entitled "Inclusion and Respect." [Filing No. 58-8 at 13; Filing No. 58-9 at 9.]

Mr. Nakabayashi's allegedly harassing behavior continued after the cease and desist order had been communicated. [Filing No. 58-2 at 26; Filing No. 58-1 at 6.] Approximately three to four times per week, Mr. Somers complained to Curtis Whitcomb (who became Mr. Somers' supervisor in February 2013) about Mr. Nakabayashi's behavior. [Filing No. 58-2 at 26.] In February, Mr. Whitcomb told Mr. Somers that he should not wear his Star of David necklace, because it "was like waving a red flag in front of [Mr. Nakabayashi]." [Filing No. 58-2 at 35.] On April 25, 2013, Mr. Nakabayashi used an unprofessional tone over the radio toward another employee (not Mr. Somers). [Filing No. 58-8 at 15.] On May 2, 2013, Mr. Nakabayashi was issued a final written warning. [Filing No. 58-8 at 15.]

Dave Miller became Mr. Somers' manager in August 2013.  [Filing No. 58-10 at 4.]  Mr. Somers had several conversations with Mr. Miller raising complaints that Mr. Nakabayashi's allegedly harassing behavior was ongoing.  [Filing No. 58-2 at 25.]  In January 2014, Mr. Somers participated in a committee on which Mr. Nakabayashi was also a representative.  [Filing No. 58-2 at 29.]  As part of their responsibilities for that committee, Mr. Nakabayashi and Mr. Somers traveled to St. Louis along with two other individuals.  [Filing No. 58-2 at 29.]  During the drive to St. Louis, Mr. Somers believed that Mr. Nakabayashi was watching pornography in the backseat with the other passenger.  [Filing No. 58-2 at 29.]  When Mr. Somers asked them to turn the volume down, Mr. Nakabayashi rubbed Mr. Somers' head and stated, "Oh, chubby little Jew boy."  [Filing No. 58-2 at 29.]

On March 21, 2014, Mr. Somers met with Mr. Miller.  [Filing No. 58-2 at 24.]  Mr. Somers informed Mr. Miller that he was "tired of [his] balls being smacked.  [He was] tired of being humiliated physically, mentally, demoralized, grabbing [his] balls, calling [him] prison bitch, calling [him] a faggot, cock sucker Jew, bastard, fuckin' Jew, disease, bastard Jew… ."  [Filing No. 58-2 at 24.]  He stated that he "couldn't take it" anymore, and that for his own mental well-being, he could not stay in his current position.  [Filing No. 58-2 at 24.]  Mr. Somers stated that he could stay with the company if he could be employed in a position or location in which he would never have to work with Mr. Nakabayashi, but Mr. Miller informed him that the company could not or would not accommodate that request.  [Filing No. 58-2 at 24-25.]  Mr. Somers officially resigned his position with Express Scripts on March 24, 2014.  [Filing No. 58-2 at 23.]

On or about March 27, 2014, Mr. Somers completed an exit interview with Nikki Foster, the Corporate Human Resources Manager.  [Filing No. 58-2 at 27.]  During that interview, he told Ms. Foster about the alleged incidents of harassment that he experienced.  [Filing No. 58-2 at 27.]

Around the same time, on or about March 27, 2014, Mr. Somers filed a charge with the EEOC stating that he had been harassed due to his religion and sex, and that he was forced to resign due to the continued harassment. [Filing No. 58-2 at 32.] On April 1, 2014, Ms. Foster initiated an investigation into the allegations made by Mr. Somers. [Filing No. 58-11 at 3.] The investigation concluded that Mr. Nakabayashi "continued to create an unprofessional work environment by making inappropriate and offensive comments after he was coached in 2012 and received a final written warning in May 2013." [Filing No. 58-11 at 8.] The investigative report recommended that Mr. Nakabayashi's employment be terminated immediately, and Mr. Nakabayashi was ultimately terminated. [Filing No. 58-11 at 8; Filing No. 58-10 at 7.]

After Mr. Somers learned that Mr. Nakabayashi's employment had been terminated, he sent Mr. Miller and Mr. Taylor text messages asking if he could be reinstated in his former position. [Filing No. 58-2 at 31.] Neither Mr. Miller nor Mr. Taylor responded as to whether Mr. Somers could be re-hired. [Filing No. 58-2 at 31.]

### C. Hostile Work Environment Claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII generally covers two types of employment discrimination: so-called discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire, and acts that create a hostile workplace, which are different in kind from discrete acts, and do not require tangible adverse employment actions." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683-84 (7th Cir. 2010) (internal quotations and citations omitted).

*1. Statute of Limitations*

Express Scripts moves for summary judgment on the basis that Mr. Somers' claims are barred by the applicable statute of limitations. [Filing No. 53 at 13.] Express Scripts argues that all of the incidents alleged by Mr. Somers must have occurred within 300 days of the filing of Mr. Somers' claim with the EEOC in order to be actionable, and that many of the incidents alleged by Mr. Somers fall outside that window. [Filing No. 53 at 13] Express Scripts also argues that the "continuing violation" doctrine cannot apply to conduct occurring outside the 300-day window, because Mr. Somers has not demonstrated that "he sued as soon as it was reasonable for him to conclude that his supervisor's harassment had created an intolerable working environment." [Filing No. 53 at 13.] Mr. Somers responds that Express Scripts cites the wrong standard for determining whether the continuing violation doctrine applies, and that under the correct standard, all of the allegedly harassing conduct may be considered. [Filing No. 57 at 20.]

Under 42 U.S.C. § 2000e–5(e)(1), in order for allegedly harassing conduct to be actionable, a plaintiff must file a charge with the EEOC within 300 days of when the unlawful employment practice occurred. A claim is time-barred if it is not filed within this time limit. 42 U.S.C. § 2000e–5(e)(1). The parties appear to agree that Mr. Somers filed his EEOC complaint on March 27, 2014, and that his 300-day statute of limitations would cover events occurring only on or after May 31, 2013.

Express Scripts cites *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696 (7th Cir. 2001), and *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164 (7th Cir. 1996), as setting forth the standard under which the Court should analyze the statute of limitations issue. [Filing No. 53 at 13.] According to Express Scripts, Mr. Somers was required to sue "as soon as the harassment [became] sufficiently palpable that a reasonable person would realize [he] had a

substantial claim under Title VII." [Filing No. 53 at 13.] Express Scripts contends that "if the harassing conduct that occurred before the limitations period was sufficient to notify the plaintiff that he had a substantial claim under Title VII, the continuing violation doctrine does not apply and he can only base his claim on conduct that occurred within the limitations period." [Filing No. 53 at 14.]

The significant problem with Express Scripts' argument is that in 2002, the Supreme Court expressly overruled the standard Express Scripts relies upon. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that "in order for the charge to be timely, the employee need only file a charge within…300 days of *any act* that is part of the hostile work environment." *Morgan*, 536 U.S. at 117-18 (emphasis added). In other words, so long as any act "contributing to the claim occurs within the filing period," a court may consider events outside of the 300-day window. *Poullard v. McDonald*, 829 F.3d 844, 860 (7th Cir. 2016).

In explaining its rationale, the Supreme Court stated that "[i]t is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct." *Morgan*, 536 U.S. at 117-18. While *Morgan* was on appeal from the Ninth Circuit, the Supreme Court stated that the lower court in that case employed a "notice" test developed in the Seventh Circuit in *Galloway*—the test that the Court explicitly

rejected. Therefore, there is no question that *Galloway* and its progeny have been overruled and no longer provide the standard for determining whether the continuing violation doctrine applies.[4]

The only question facing the Court, then, is whether any of the acts contributing to the allegedly hostile work took place within the 300-day statutory window. If so, then the Court may consider any contributing acts that occurred outside of that window.

Mr. Somers has made several allegations that Mr. Nakabayashi's allegedly harassing conduct occurred on or after May 31, 2013. Mr. Whitcomb became Mr. Somers' supervisor in February 2013, and Mr. Somers attests that he complained to Mr. Whitcomb about Mr. Nakabayashi's ongoing harassment approximately three to four times a week from February 2013 until he resigned in March 2014. [Filing No. 58-2 at 26.] Mr. Miller became Mr. Somers' manager in August 2013, and Mr. Somers attests that he had several conversations with Mr. Miller raising complaints that Mr. Nakabayashi's allegedly harassing behavior was ongoing. [Filing No. 58-2 at 25.] Mr. Somers also submitted evidence that in January 2014, Mr. Nakabayashi rubbed Mr. Somers' head and stated "Oh, chubby little Jew boy," when Mr. Somers asked Mr. Nakabayashi to turn the volume down on what Mr. Somers perceived to be pornography. [Filing No. 58-2 at 29.] When Mr. Somers met with Mr. Miller to discuss his resignation, he indicated that the harassment was ongoing and current, stating that he was "tired of [his] balls being smacked. [He was] tired of being humiliated physically, mentally, demoralized, grabbing [his] balls, calling [him] prison bitch, calling [him] a faggot, cock sucker Jew, bastard, fuckin' Jew, disease, bastard Jew…" [Filing No. 58-2 at 24.] Moreover, the investigation conducted by Express Scripts' human

---

[4] The Court reminds counsel that it has a duty to verify that its citations to legal authority are accurate and that the legal citations provided remain "good law" at the time that its filings are submitted. Failure to do so not only constitutes ineffective advocacy, but also implicates counsel's reputation and duty of candor to the Court.

resources department concluded that Mr. Nakabayashi "continued to create an unprofessional work environment by making inappropriate and offensive comments after he was coached in 2012 and received a final written warning in May 2013." [Filing No. 58-11 at 8.]

Mr. Somers has sufficiently alleged harassing behavior within the statute of limitations period, such that the Court may consider allegations of harassment contributing to a hostile work environment that occurred outside of the 300-day window. Express Scripts is not entitled to summary judgment on this basis.

### 2. *Harassment on the Basis of Religion*

In order to state a Title VII hostile work environment claim, a plaintiff must allege that "(1) [he] was subject to unwelcome harassment; (2) the harassment was based on [his] national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015) (internal citation omitted).

Express Scripts argues that it is entitled to summary judgment on Mr. Somers' claim of religious discrimination because the conduct alleged by Mr. Somers was not sufficiently severe or pervasive to be objectively hostile, and because there is no basis for employer liability. [Filing No. 53 at 23.] Mr. Somers responds that he was subjected to anti-Semitic slurs hundreds of times during his employment, and that this "constant verbal assault" was sufficiently severe and pervasive to constitute a hostile work environment. [Filing No. 57 at 23.] He also argues that he submitted complaints to a variety of supervisors and to the human resources department regarding the harassment, and Express Scripts was negligent in failing to remedy it. [Filing No. 57 at 23.]

In order to satisfy the third prong of the hostile work environment inquiry, Mr. Somers must demonstrate that Mr. Nakabayashi's behavior was both objectively and subjectively offensive.[5]  Mr. Somers attests that Mr. Nakabayashi called Mr. Somers, among others, the following names: fat fucking Jew, Jew bastard, Jew boy, dirty Jew, and Christ killer.  [Filing No. 54-1 at 30; Filing No. 54-1 at 32; Filing No. 58-13 at 4.]  In addition, Mr. Somers submitted evidence that Mr. Nakabayashi made the following statements: Jews carry disease; the Holocaust was a punishment for the Jews because they killed Jesus; and Hitler was misunderstood.  [Filing No. 54-1 at 30; Filing No. 54-1 at 32; Filing No. 58-2 at 34; Filing No. 58-13 at 4.] Express Scripts does not appear to dispute that any of these statements were made, and many of them were allegedly made in the presence of third parties.  [*See* Filing No. 58-13 (affidavit of Cody Anderson).]  The Court has no doubt that a reasonable person could find these remarks offensive and severe—not only do they single out members of a particular religion and identify them as "dirty" and "carrying disease," but they also reference the mass murder of Jewish people in the Holocaust, and suggest that such events were justified, misunderstood, or appropriately punitive. A reasonable jury could conclude that these remarks were objectively offensive and severe enough to support a hostile work environment claim.

As for the alleged harassment's pervasiveness, Mr. Somers attests that Mr. Nakabayashi made harassing comments nearly daily during the period of Mr. Somers' employment.  The Seventh Circuit has stated that "there is no magic number of incidents required to establish a hostile environment."  *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007).  Given that the statements were made nearly daily, Mr. Somers estimates that hundreds of comments were

---

[5] Express Scripts does not appear to dispute that the behavior alleged was subjectively offensive, so the Court will not address this element.

made regarding Mr. Somers' religion. While Mr. Somers is not required to show that the harassment was both severe and pervasive (a showing of one or the other is sufficient), the Court also finds that a reasonable jury could conclude from the evidence submitted that Mr. Nakabayashi's conduct was pervasive enough to cause a hostile work environment. *See id.* (concluding that allegations of "at least eighteen sexist or sexual comments in less than a year's time" were sufficient to support a finding of pervasiveness).

Express Scripts also argues that Mr. Somers cannot establish that Express Scripts is liable for Mr. Nakabayashi's alleged harassment. Express Scripts contends that it took appropriate action to remedy the alleged harassment once it became aware of the offending conduct, and therefore it cannot be held liable. [Filing No. 53 at 23-25.] Mr. Somers responds that Express Scripts failed to take appropriate remedial action, and therefore it was negligent in remedying the harassment. [Filing No. 57 at 23-27.]

An employer is "liable for a co-employee's harassment only when [it has] been negligent either in discovering or remedying the harassment." *Parkins v. Civil Constructors of Illinois, Inc.*, *163 F.3d 1027, 1032 (7th Cir. 1998)* (internal quotation and citation omitted). "An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment of its employees." *Id.* (internal quotation and citation omitted).

Express Scripts first argues that "[e]very time Express Scripts discovered Plaintiff's harassment allegations, it conducted an investigation." However, the record does not support Express Scripts' statement.[6] Mr. Somers attests that he made his first complaint to a supervisor

---

[6] It is undisputed that two investigations were conducted: one occurred following Mr. Somers' second complaint to Ms. Oden in human resources, and one occurred after Mr. Somers' resignation and exit interview with Express Scripts' corporate human resources representative.

(Mr. Murphy) in February or March 2012.  [Filing No. 54-1 at 28.]  The record contains no evidence that an investigation was conducted regarding this complaint.  Instead, Mr. Somers attests that Mr. Murphy told him to grow a thicker skin.  [Filing No. 54-1 at 28.]  Mr. Somers complained again to Mr. Murphy shortly after his first complaint, and Mr. Murphy told him to "get used to it." [Filing No. 54-1 at 29.]  There is no evidence in the record that an investigation was conducted following this complaint, and Express Scripts does not appear to dispute any of these facts as alleged.

In May or June 2012, Mr. Somers reported Mr. Nakabayashi's behavior to Mr. Tucker, who had become Mr. Somers' supervisor.  [Filing No. 54-1 at 31.]  The record contains no evidence of an investigation being conducted, and Mr. Somers is not aware of any action being taken as a result of that complaint.  [Filing No. 54-1 at 33.]  Mr. Somers also attests that he complained to supervisor Curtis Whitcomb approximately three to four times per week regarding Mr. Nakabayashi's behavior starting in February 2013, and there is no evidence in the record that investigations were conducted following these complaints.  Instead, Mr. Whitcomb allegedly told Mr. Somers that he should not wear his Star of David necklace, because it "was like waving a red flag in front of [Mr. Nakabayashi]."  [Filing No. 58-2 at 35.]  And finally, Mr. Somers attests that he had several conversations with Mr. Miller raising complaints that Mr. Nakabayashi's allegedly harassing behavior was ongoing, beginning in August 2013.  [Filing No. 58-2 at 25.]  Again, there is no evidence in the record that investigations were conducted regarding these complaints.

From this evidence, a reasonable jury could conclude, contrary to Express Scripts' allegation on summary judgment, that Express Scripts did not investigate many complaints of harassment of which it became aware.  Indeed, if a jury credited Mr. Somers' account, it could

conclude that Express Scripts investigated only two out of over a dozen complaints made by Mr. Somers.

Express Scripts also argues that it took additional remedial steps that shield it from liability for any harassment perpetrated by Mr. Nakabayashi. Express Scripts cites to the following remedial actions:

- It conducted department meetings to address issues of proper workplace conduct and respect after Plaintiff reported that he felt harassed;

- It disciplined the offending employee when warranted;

- It ultimately discharged Mr. Nakabayashi; and

- Express Scripts' management followed up with Mr. Somers on multiple occasions, and Mr. Somers informed them that the harassing conduct had stopped.

[Filing No. 53 at 24.]

The Court finds that a reasonable jury could conclude that these measures, if they were taken at all, were not sufficient to remedy the harassment alleged by Mr. Somers. Express Scripts' statement that it "disciplined the offending employee when warranted" erroneously assumes one conclusion that it is required to prove—*i.e.*, when discipline was warranted. The undisputed record evidence establishes that Mr. Nakabayashi was disciplined on one occasion for conduct related to Mr. Somers—when he was given the "cease and desist instruction" to halt his "inappropriate activity." [Filing No. 58-8 at 8.] However, a reasonable jury could conclude that Mr. Nakabayashi continued to engage in harassing behavior after the discipline he received. For example, the investigation conducted by Express Scripts' human resources department concluded that Mr. Nakabayashi "continued to create an unprofessional work environment by making inappropriate and offensive comments after he was coached in 2012 and received a final written warning in May 2013." [Filing No. 58-11 at 8.] If the jury credited this evidence, along with Mr. Somers'

allegations that he continued to report the offending conduct, it could conclude that Express Scripts did not discipline the offending employee when warranted.

As to Express Scripts' argument that its termination of Mr. Nakabayashi's employment constitutes an adequate remedial measure, a reasonable jury could conclude that Mr. Nakabayashi's termination provides no evidence of reasonable measures to remediate the ongoing harassment. It occurred *after* Mr. Somers had resigned from his position, so a jury could conclude that Mr. Nakabayashi's termination had no remedial effect at all. And finally, Express Scripts argues that its management followed up with Mr. Somers on multiple occasions, and Mr. Somers informed them that the harassing conduct had stopped. However, Mr. Somers disputes Express Scripts' factual allegations, stating that he never told a member of Express Scripts' management, or anyone else, that the harassment had stopped. [Filing No. 58-2 at 19; Filing No. 58-1 at 11.] Express Scripts cannot assert its version of the facts on summary judgment, where Mr. Somers has presented admissible contrary evidence. There is at a minimum a genuine dispute of material fact regarding this issue.

Taking this evidence in combination, the Court finds that a reasonable jury could conclude that Express Scripts was negligent in remedying the alleged harassment, and that genuine issues of material fact exist regarding this issue. Express Scripts' Motion for Summary Judgment on this claim is denied.[7]

---

[7] The Court notes that Express Scripts begins its argument regarding Mr. Somers' alleged religious discrimination with a header stating that "Plaintiff Has Presented No Evidence That He Was Harassed Based Upon His Religion." [Filing No. 53 at 21.] This statement blatantly contradicts the record evidence and ignores the legal standard to which this Court must adhere on summary judgment. As the Court pointed out in Section I, on several occasions Express Scripts mischaracterizes the record evidence. It also asks the Court to accept its versions of fact as true in the face of Mr. Somers' contrary factual allegations that are supported by admissible evidence. The Court directs Express Scripts to consider the following admonition from the Seventh Circuit regarding similar summary judgment motion practices. *See Malin v. Hospira, Inc.*, 762 F.3d 552,

### 3. Harassment on the Basis of Sex

As in the religious discrimination context, to establish a prima facie case of sexual harassment under Title VII, a plaintiff must establish that: (1) he was subjected to unwelcome harassment; (2) the harassment was based on his sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Boumehdi*, 489 F.3d at 788.

Express Scripts argues that it is entitled to summary judgment on this claim because Mr. Somers cannot establish that he was discriminated against because of his sex. Express Scripts contends that Mr. Nakabayashi's behavior does not constitute harassment based on sex because Mr. Nakabayashi's conduct amounted merely to "horseplay" or simple vulgarity. [Filing No. 53 at 17.] Mr. Somers responds that the conduct alleged by Mr. Somers is significantly more severe than horseplay, and was, on its face, sexual and based on sex.[8] [Filing No. 57 at 30.]

---

564-65 (7th Cir. 2014) ("These misrepresentations of the record did not comport with parties' duty of candor to the courts. [The Defendant] seems to have based its litigation strategy on the hope that neither the district court nor this panel would take the time to check the record. Litigants who take this approach often (and we hope almost always) find that they have misjudged the court. We caution [the Defendant] and other parties tempted to adopt this approach to summary judgment practice that it quickly destroys their credibility with the court. This approach to summary judgment is also both costly and wasteful. If a district court grants summary judgment in a party's favor based on its mischaracterizations of the record, the judgment will in all likelihood be appealed, overturned, and returned to the district court for settlement or trial. This course is much more expensive than simply pursuing a settlement or trying the case in the first instance… . Risking such pitfalls in the hope of avoiding a trial is a dramatic miscalculation of the risks and rewards of each approach.").

[8] Earlier in the case, at the motion to dismiss phase, the issue of whether Mr. Somers alleged sexual orientation discrimination was raised by Express Scripts. Mr. Somers denied that his complaint asserted such a claim, and the parties do not appear to raise it in the instant motion. The Court therefore does not address it, but notes that if Mr. Somers were to raise a claim based on sexual orientation, such a claim would be cognizable under Title VII. *See Hively v. Ivy Tech Community College of Indiana*, 2017 WL 1230393, *9 (7th Cir. 2017) (holding that "a person who alleges that [he] experienced employment discrimination on the basis of [his] sexual orientation has put forth a case of sex discrimination for Title VII purposes").

The Court recaps the incidents of sexual harassment alleged by Mr. Somers that are undisputed by Express Scripts. Mr. Nakabayashi repeatedly called Mr. Somers, among other sexually-themed epithets, a "little faggot," "prison bitch," and "cock sucker." [Filing No. 54-1 at 27; Filing No. 54-1 at 31.] He repeatedly physically groped Mr. Somers by slapping, grabbing, and pulling Mr. Somers' testicles. [Filing No. 54-1 at 31; Filing No. 58-2 at 33; Filing No. 54-1 at 27.] He also repeatedly grabbed Mr. Somers by the hips from behind and simulated sexual intercourse. [Filing No. 54-1 at 24.] At times, Mr. Nakabayashi's groping was painful and would cause bruising to Mr. Somers' hips. [Filing No. 54-1 at 36.] Mr. Nakayabashi also simulated "[Mr. Nakabayashi's] fist going in [Mr. Somers'] ass." [Filing No. 54-1 at 27.] Mr. Somers stated that while groping him, Mr. Nakabayashi would tell Mr. Somers that Mr. Somers "liked it." [Filing No. 54-1 at 24.] Mr. Nakabayashi also stated to Mr. Somers, "I bet you give a great knob job, wouldn't you," and that Mr. Nakabayashi would meet Mr. Somers "at the truck stop." [Filing No. 58-2 at 34.] Mr. Somers became fearful that Mr. Nakabayashi would attempt to sexually assault him. [Filing No. 58-2 at 33.]

The Court concludes that Mr. Somers' undisputed allegations are sufficient for a jury to conclude that the alleged harassment occurred based on his sex. First, Mr. Nakabayashi repeatedly and violently touched Mr. Somers' genitals. The Court risks stating the obvious in noting that women do not have testicles, so there is an obviously sex-based (and sexual) component to Mr. Nakabayashi's choice to grope Mr. Somers' uniquely male anatomy. Mr. Nakabayashi simulated engaging in sexual intercourse with Mr. Somers, and in doing so, forcibly grabbed Mr. Somers so hard that he caused bruising. The Court notes that these actions might have constituted battery or

sexual battery under Indiana Code Sections 35-42-2-1 and 35-42-4-8.[9]  Indeed, the touching was

so violent that Mr. Somers testified that he feared being sexually assaulted by Mr. Nakabayashi.

Finally, Mr. Nakabayashi made repeated sexualized remarks to Mr. Somers, as detailed above.

Considering this evidence as a whole, within the context of all of the evidence of

harassment in the case, the Court finds that a reasonable jury could conclude that the alleged

harassment occurred on the basis of Mr. Somers' sex.  *See Spearman v. Ford Motor Co.*, 231 F.3d

1080, 1084 (7th Cir. 2000) ("…we must consider any sexually explicit language…within the

context of all of the evidence of harassment in the case, and then determine whether the evidence

as a whole creates a reasonable inference that the plaintiff was discriminated against based on his

sex").

Express Scripts argues that Mr. Nakabayashi's behavior was not sex-based, because it

constituted mere horseplay or vulgar banter, and it cites a number of cases in support of that general

argument.  [Filing No. 53 at 18-21.]  Those cases fail to support Express Scripts' contention,

because they all rely explicitly or implicitly on the following proposition: "the occasional vulgar

banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work

environment that a reasonable person would find intolerable."  *Kampmier v. Emeritus Corp.*, 472

F.3d 930, 941 (7th Cir. 2007) (internal quotation and citation omitted).  First, by the undisputed

---

[9] *See* I.C. 35-42-2-1(c) ("Except as provided in subsections (d) through (k), a person who
knowingly or intentionally: (1) touches another person in a rude, insolent, or angry manner; or (2)
in a rude, insolent, or angry manner places any bodily fluid or waste on another person…commits
battery, a Class B misdemeanor."); I.C. 35-42-4-8(a) ("A person who, with intent to arouse or
satisfy the person's own sexual desires or the sexual desires of another person: (1) touches another
person when that person is: (A) compelled to submit to the touching by force or the imminent
threat of force; or (B) so mentally disabled or deficient that consent to the touching cannot be
given; or (2) touches another person's genitals, pubic area, buttocks, or female breast when that
person is unaware that the touching is occurring…commits sexual battery, a Level 6 felony.").

facts, the behavior at issue here is not limited to remarks or name-calling—it includes the unconsented-to physical touching of a coworker's genitals. That behavior is fundamentally different in kind from the behavior at issue in any of the cases cited by Express Scripts, and the Court cannot conclude as a matter of law that such touching constituted mere "horseplay". A reasonable person could certainly conclude that the touching alone, as alleged by Mr. Somers, created a work environment that was intolerable. In addition, a reasonable jury could conclude that the alleged verbal harassment constituted more than "occasional vulgar banter," particularly in the context of the unconsented physical touching to which Mr. Somers was subjected.[10]

For these reasons, the Court denies Express Scripts' Motion for Summary Judgment on this claim.

### D. Constructive Discharge Claim

Express Scripts moves for summary judgment on Mr. Somers' constructive discharge claim, arguing that (1) Mr. Somers' working conditions were not unbearable; (2) Express Scripts took appropriate corrective action to remedy the working conditions; and (3) Mr. Somers resigned, not because of the harassment, but because he found a more suitable job elsewhere. [Filing No. 53 at 25-27.] Mr. Somers responds that his working conditions meet the standard for constructive discharge and that Express Scripts failed to remedy them. [Filing No. 57 at 33-34.]

---

[10] Express Scripts argues that because Mr. Somers and Mr. Nakabayashi are both male, the inference of discrimination is more difficult to draw. Express Scripts contends that "in opposite-sex harassment cases involving 'explicit or implicit proposals of sexual activity,' the inference of discrimination is easier to draw because 'it is reasonable to assume those proposals would not have been made to someone of the same sex.' The same does not hold true for same-sex harassment cases absent some evidence that the harasser was homosexual." [Filing No. 53 at 17 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).] However, this is not a "vulgar banter" case, in which the Court must rely solely on ambiguous remarks or possible "banter" to determine whether the conduct at issue was based on sex or sexualized. As described above, the unconsented physical touching removes this case from the possible ambit of mere banter.

Constructive discharge occurs "when the plaintiff shows that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). Working conditions may become unbearable due to discriminatory harassment. *See id.* "Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (internal quotation and citations omitted).

Courts have found constructive discharge, for example, "when there is a threat to a plaintiff's personal safety." *Id.* (citing *Porter v. Erie Foods, Int'l, Inc.,* 576 F.3d 629, 640 (7th Cir. 2009) (holding that claim for constructive discharge possible where harassment includes implied threats of physical violence)). Here, as discussed above, Mr. Somers has alleged that Mr. Nakabayashi, without consent, repeatedly physically groped Mr. Somers' genitals and forcibly simulated sexual intercourse, which resulted in bruising to Mr. Somers' hips. Mr. Somers also testified that he was fearful that Mr. Nakabayashi would sexually assault him. A reasonable jury could conclude that under these circumstances, as combined with the verbal harassment Mr. Somers allegedly suffered because of his religion and gender, Mr. Somers' work conditions were indeed unbearable.

Express Scripts argues that Mr. Somers resigned his position because he found a position with a shorter commute, not because of any harassment. Mr. Somers alleges and provides admissible evidence in support of the contention that he left as a result of the harassment. This factual dispute illustrates precisely why this is an issue inappropriate for resolution on summary

judgment.  It is for the jury, not the Court at the summary judgment stage, to decide which facts should be credited.

The Court therefore denies Express Scripts' Motion for Summary Judgment on this issue.

**E. Retaliation Claim**

Express Scripts moves for summary judgment on Mr. Somers' claim that Express Scripts retaliated against him in violation of Title VII when it failed to rehire him to his former position. Express Scripts argues that Mr. Somers has presented no evidence that would support an inference of retaliatory intent, and that there is no causal link between Mr. Somers' EEOC charge and his reemployment with Express Scripts.  [Filing No. 53 at 28.]  Mr. Somers responds that he has provided sufficient evidence to support an inference of retaliation, including that Mr. Somers was the "number one man" at servicing a particular machine used by Express Scripts and that Mr. Miller "begged" Mr. Somers not to resign his position in the first place.  He also argues that at the time that he reached out to his former supervisors about being rehired, Express Scripts was advertising openings for EMT positions.

To establish a Title VII retaliation claim, a plaintiff must allege that he engaged in statutorily protected activity and was subjected to an adverse employment action as a result of that activity.  *Huri*, 804 F.3d at 833.  "To demonstrate the requisite causal connection in a retaliation claim, plaintiffs must show that the protected activity and the adverse action were not wholly unrelated." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000).  Speculation based on suspicious timing will not alone support a reasonable inference of retaliation. *Id.*  Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another. *Id.*

Mr. Somers fails to allege sufficient facts to permit an inference of retaliation. While Mr. Somers alleges that he texted Mr. Miller and Mr. Taylor to ask whether he might have his job back, he does not allege that either Mr. Miller or Mr. Taylor had the authority to rehire him. He likewise does not allege that Mr. Miller or Mr. Taylor communicated Mr. Somers' request to anyone with hiring authority or that they had the responsibility to do so. And he concedes that he did not submit a job application for the open positions that Express Scripts advertised. Moreover, he does not allege that either of those individuals (or anyone else at Express Scripts) was aware that Mr. Somers had filed an EEOC charge. Therefore, Mr. Somers has not alleged sufficient facts to support the conclusion that Express Scripts failed to rehire him. And absent some allegation of knowledge of the EEOC charge, Mr. Somers cannot establish a causal connection between his exercise of a right protected by Title VII and the allegedly adverse employment action.

Therefore the Court grants Express Scripts' Motion for Summary Judgment on Mr. Somers' retaliation claim.

### III.
#### CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS IN PART** Express Scripts' Motion to Strike, [Filing No. 63], to the extent that it strikes one statement, as described above, from Mr. Somers' statement of material facts, but **DENIES** the remainder of Express Scripts' Motion to Strike; and

- **GRANTS** Mr. Somers' Motion to Strike Express Scripts' proffered medical record, [Filing No. 65-1], and to replace Filing No. 58-12 with Filing No. 67-1; and

- **DENIES** Express Scripts' Motion for Summary Judgment, [Filing No. 52], with respect to Express Scripts' statute of limitations defense, the hostile work environment claims both as to religious and sex harassment, and the constructive discharge claim; and

- **GRANTS** Express Scripts' Motion for Summary Judgment, [Filing No. 52], as to the retaliation claim.

No partial judgment shall issue, and the Court requests that the Magistrate Judge confer with the parties regarding possible resolution of the remaining claims.

Date: April 11, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Craig W. Wiley
JACKSON LEWIS P.C. - Indianapolis
craig.wiley@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS P.C. - Indianapolis
melissa.taft@jacksonlewis.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@stowersandweddle.com